**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KYLE L. PUGH**, | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No. 05-0506** |
| v. | ) | |
| | ) | |
| **JO ANNE B. BARNHART**, | ) | |
| COMMISSIONER OF SOCIAL SECURITY,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**March 30, 2006**

**I.      Introduction**

        Plaintiff Kyle L. Pugh brings this action pursuant to 42 U.S.C. § 405(g), seeking review

of the final determination of the Commissioner of Social Security ("Commissioner") denying her

application pursuant to the Social Security Act ("Act") for Supplemental Security Income

benefits ("SSI") and Disability Insurance Benefits ("DIB").  As is the customary practice in the

Western District of Pennsylvania, the parties have submitted cross motions for summary

judgment and the record developed at the administrative proceedings.

        After careful consideration of the decision of the Administrative Law Judge ("ALJ"), the

memoranda of the parties, and the entire record, this Court finds that the decision of the

Commissioner is supported by substantial evidence and therefore, will grant the Commissioner's

Motion for Summary Judgment (document no. 9), will deny plaintiff's Motion for Summary

Judgment (document no. 11), and will affirm the decision of the Commissioner.

---

        [1] Jo Anne B. Barnhart became the Commissioner of Social Security effective November
14, 2001.  Pursuant to Fed.R.Civ.P. 25(d)(1) and 42 U.S.C. § 405(g), Commissioner Barnhart is
automatically substituted as the defendant in this action.

**II.      Procedural History**

Plaintiff applied for SSI on March 21, 2001, and DIB on January 24, 2003, alleging

disability since March 10, 1999, as a result of severe bone disease, asthma, arthritis, a knee

injury, anxiety and depression. R. 55-57, 89, 429.  The application was denied initially and upon

reconsideration. R. 41-45.  On April 28, 2004, a hearing was held before ALJ Michael F.

Colligan at which plaintiff testified, as did a vocational expert ("VE").  R. 26-40.  Plaintiff was

represented by counsel. *Id*.

On October 22, 2004, the ALJ issued a decision in which he found plaintiff was not

disabled because she retained the residual functional capacity ("RFC") to engage in work at the

light exertional level. R. 22-23

On February 9, 2005, the Appeals Council denied plaintiff's request for review, and the

ALJ's decision became the final decision of the Commissioner. R. 5-7.  Plaintiff then filed her

complaint in this Court, and the matter is now before this Court on cross-motions for summary

judgment filed under Rule 56 of the Federal Rules of Civil Procedure.

**III.     Statement of the Case**

Plaintiff was born on July 19, 1979, and was a twenty-five (25) year old individual at the

time of the hearing before the ALJ. R. 14.  Plaintiff has an eleventh grade education and her past

relevant work includes that of a laborer and cleaner. *Id*.  Plaintiff alleges disability as a result of

exertional and non-exertional impairments:  asthma, anxiety, depression, knee injury, and bone

disease. R. 55-57, 89, 429.

The ALJ concluded plaintiff was not eligible for DIB or SSI.  The ALJ determined the

plaintiff's asthma, anxiety, depression, knee injury, and bone disease were "severe" medically determinable impairments. R. 13-23.  The ALJ found plaintiff had the RFC to perform light exertional work, but could not perform her past relevant work. *Id*.  According to the Medical-Vocational Guidelines (Rule 202.17) and the recommendation of the VE, the ALJ determined there were sufficient unskilled jobs in the national economy which plaintiff could perform, and plaintiff was thus not disabled. *Id*.

The ALJ made the following specific findings:

1. The claimant meets the non-disability requirements for disability benefits and is insured for benefits through June 30, 2000.

2. The claimant has not engaged in substantial gainful activity since March 10, 1999, the alleged onset date of disability.

3. The claimant suffers from asthma, Leri-Weill syndrome affecting the elbows, wrists and knees, degenerative changes of the cervical and lumbar spine and depression, impairments considered "severe" based on the requirements in the Regulations (20 CFR 404.1520(b) and 416.920(b)).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR 404.1527 and 416.927).

7. The claimant retains the residual functional capacity to perform work at the light exertional level.  The claimant is able to lift 20 pounds occasionally and 10 pounds frequently and can sit, stand and walk about 6 hours during and 8-hour workday.  Further, the claimant is limited to work involving simple, routine repetitive tasks and should have minimal contact with the public.  In addition, claimant should avoid exposure to temperature extremes, dust, fumes an odors.

8.      The claimant is unable to perform her past relevant work as a laborer and cleaner (20 CFR 404.1565 and 416.965).

9.      The claimant is 25 years of age, a "younger individual" (20 CFR 404.1563 and 416.963).

10.     The claimant has a "limited education" (20 CFR 404.1564 and 416.964).

11.     The claimant has "unskilled" work experience (20 CFR 404.1568 and 416.968).

12.     The claimant has the residual functional capacity to perform a significant range of light work with the additional limitations set forth in finding #7 above (20 CFR 404.1567 and 416.967).

13.     Although the claimant's exertional and non-exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, there are a significant number of unskilled jobs in the national economy that she could perform.  Examples of such jobs include work as an unarmed guard, tele services work and bench assembly work.

14.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(g) and 416.920(g).

R. 22-23.


**IV.     Standards of Review**

Judicial review of  the Commissioner's final decisions on disability claims is provided by

42 U.S.C. §§ 405(g)[2] and 1383(c)(3)[3].  Section 405(g) permits a district court to review

transcripts and records upon which a determination of the Commissioner is based.  Because the

standards for eligibility under Title II (42 U.S.C. §§ 401- 433, regarding Disability Insurance

Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under

Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"),

disability decisions rendered under Title II are pertinent and applicable to those rendered under

Title XVI.  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

     If supported by substantial evidence, the Commissioner's factual findings must be

accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v.

Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to

determine whether the record, *as a whole*, contains substantial evidence to support the

Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson

v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial

---

[2] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a
> hearing to which he was a party, irrespective of the amount in controversy, may
> obtain a review of such decision by a civil action . . . brought in the district
> court of the United States for the judicial district in which the plaintiff resides,
> or has his principal place of business. . .

42 U.S.C. § 405(g).

[3] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing
> under paragraph (1) shall be subject to judicial review as provided in section
> 405(g) of this title to the same extent as the Commissioner's final
> determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record

6

discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized

7

this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59;

*Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, she will be deemed disabled where she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A).  In order to prove disability under this second method, plaintiff first must demonstrate the existence of a medically determinable disability that precludes her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that she is unable to resume her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777;  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195.  Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a Listed Impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,*  247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he or she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984);

10

*Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.   *See* 20 C.F.R. § 404.1529(c) (2002).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated:  "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  While "there must be objective medical evidence of some condition that could reasonably

produce pain, *there need not be objective evidence of the pain itself*." *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

**V.     Discussion**

Plaintiff's arguments are somewhat unclear, but it seems that plaintiff contends that the ALJ erred in finding that she was unable to perform her past relevant work as a laborer and cleaner, but that she retained the RFC to perform work in the national economy as an unarmed guard, bench assembler, or in tele services. R. 21-23.  Thus, the error is alleged to have occurred at Step 5 of the sequential evaluation.

As noted above, once it is shown that plaintiff is unable to resume her previous employment, the burden shifts to the Commissioner (at Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, she is able to perform

substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461;

*Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777;  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir.

1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

> The ALJ made the following findings:

> > The claimant is able to lift 20 pounds occasionally and 10 pounds frequently
> > and can sit, stand and walk about 6 hours during and 8-hour workday.
> > Further, the claimant is limited to work involving simple, routine repetitive
> > tasks and should have minimal contact with the public.  In addition,
> > claimant should avoid exposure to temperature extremes, dust, fumes and
> > odors.
> >
> > * * *
> >
> > Although the claimant's exertional and non-exertional limitations do not
> > allow her to perform the full range of light work, using Medical-Vocational
> > Rule 202.17 as a framework for decision-making, there are a significant
> > number of unskilled jobs in the national economy that she could perform.
> > Examples of such jobs include work as an unarmed guard, tele services
> > work and bench assembly work.

> Plaintiff argues that such jobs are at the same exertional level as her past relevant work,

which the ALJ properly found plaintiff could not perform.  *See*, *The Dictionary of Occupational

Titles* ("DOT").  Vol. 1, Fourth Edition, Rev. 1991.  While it is correct that both her past relevant

work and the jobs of unarmed guard, tele services worker, and bench assembly worker are

considered to be at the light exertional level, the DOT does not differentiate between light duty

exertional level jobs, and modified light duty exertional level jobs.

> Plaintiff does not point to any relevant case law or other authority for her proposition that

the ALJ's decision is not supported by substantial evidence, nor does she account for the fact that

the specific jobs listed in the DOT do not differentiate between jobs with a "full range" and a

"significant range" of light work.

> The ALJ posed a hypothetical to the VE using plaintiff's RFC, age, education, and work

experience in accordance with 20 CFR Sections 404.1567 and 416.967. R. 22-23.  The ALJ also properly used Medical-Vocational Rule 202.17 as a framework for his decision-making and came to the conclusion that with plaintiff's RFC, age, education, and work experience, plaintiff could perform a significant number of unskilled jobs in the national economy. *Id.*  Therefore, the ALJ findings with respect to Step 5 of the sequential evaluation are supported by substantial evidence.


**VI.     Conclusion**

The Court has reviewed the ALJ's findings of fact and conclusions and determines that his findings are supported by substantial evidence, for the reasons set forth above.  Accordingly, the Court will grant defendant's Motion for Summary Judgment (document no. 9), deny plaintiff's Motion for Summary Judgment (document no. 11), and affirm the decision of the Commissioner.

An appropriate order will follow.


_____

_____          s/Arthur J. Schwab_____
                                                  Arthur J. Schwab
                                                  United States District Judge


cc:     All counsel of record

14